IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIESHA WOLABAUGH, | : | Civil No.  4:24-CV-1989 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I.    Introduction

Among the issues raised by the plaintiff in the instant Social Security appeal is the narrow argument that the residual functional capacity (RFC) fashioned by the administrative law judge (ALJ) in her case is not supported by substantial evidence because the ALJ did not properly address her use of a cane in the assessment. As the plaintiff points out, the Social Security regulations specifically contemplate that the "requirement to use a hand-held assistive device may . . . impact on the individual's

---

[1]Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). Thus, the issue of whether a claimant requires an assistive device is one that can be outcome determinative in disability cases.

When faced with a potentially outcome determinative issue on appeal, it is the duty and responsibility of the district court to review the ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record, see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This informed assessment by the ALJ, however, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Thus, the Social Security Act and case law construing the Act place a duty of articulation upon ALJ's which is essential to informed evaluation of disability determinations on appeal.

2

We are reminded of these guiding tenets of Social Security practice as we turn to this case. In the instant case, an ALJ denied Kiesha Wolabaugh's disability application, which alleged disability beginning on November 23, 2021, in part due to degenerative disc disease causing chronic lower back pain. However, in reaching this result the ALJ did not include a provision in the residual functional capacity (RFC) to account for Wolabaugh's use of an assistive device to ambulate. Moreover, although the ALJ mentioned indications of gait dysfunction and that she was observed using a "non-prescribed cane," the ALJ did not address whether the cane use was medically necessary under the regulations, despite ample medical documentation that, following a July 2022 surgery, she used a cane due to this gait dysfunction and a "drop foot."

In our view, given the evidence which reveals that Wolabaugh, at least for a portion of the relevant period, experienced severe gait dysfunction, was considered a fall risk, and at least four different providers noted she used a cane for ambulation, more is needed here to justify the ALJ's decision which fashioned an RFC for Wolabaugh that wholly discounted his use of a cane and instead required her "to perform sedentary work as defined in 20 CFR 404.1567(b) . . . stand or walk for 2 hours each per 8-hour workday . . . occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl." (Tr. 22). Indeed, in similar

3

circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for their need for an assistive device, a remand is warranted. See Stahurski v. O'Malley, No. 3:22-CV-1807, 2024 WL 3204243, at *1 (M.D. Pa. June 27, 2024); Jordan v. Kijakazi, No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar. 23, 2023); Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.   **Statement of Facts and of the Case**

Because we have determined that a remand is necessary due to the failure of the ALJ to account for Wolabaugh's use of an assistive device in the RFC assessment, we will focus upon this issue when assessing the record.

On January 5, 2022, Wolabaugh filed a claim for disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging an onset of disability beginning on November 23, 2021. (Tr. 17). Wolabaugh was 34 years old on the alleged date of the onset of her disability, which was defined as a younger individual under the regulations. (Tr. 65). She has a high school education and previously worked as a receptionist. (Tr. 189).

On her application for disability benefits, Wolabaugh alleged she was disabled due to lumbar back pain, lumbar spine surgery, diabetes, breast cancer, hypertension, depression, and anxiety. (Tr. 65). Her need for an assistive device results from her lumbar back pain radiating down her legs and complications from a surgery which resulted in nerve damage to her right foot which caused a "drop foot." As the ALJ summarized:

> The claimant has lumbar degenerative disc disease. The claimant has a history of back surgery, to include a lumbar fusion of the L5 to S1 in July 2022, to address stenosis, right leg radiculopathy, and low back pain, and a prior laminectomy of the L4/5 and L5/S1 (3F/15, 34; 12F/34). The claimant reported having low back pain and radiculopathy to both lower extremities, to include numbness and tingling (3F/7; 6F/105; 12F/44; 14F/13). The claimant sought emergency department care for her pain (6F/65, 100). Exams showed tenderness over the lumbar spine and some positive straight leg raise tests, but she no longer had straight leg raising after her most recent surgery (3F/7, 34; 12F/27, 42; 30F/16; 32F/7, 9). Imaging showed lumbar disc disease, to include disc bulging, neural foraminal stenosis, loss of height, and ridging, and imaging after her surgery showed stable findings (2F/22; 3F/9; 10F/7; 22F/46). Treatment included injections, medication, and physical therapy (10F/8; 22F/44; 34F/35). There were some indications of poor gait due to a drop foot and providers stated she was a significant fall risk, and she was observed using a non-prescribed cane (12F/27; 34F/34, 35).

(Tr. 23-24).

On this score, the record clearly shows that it was after Wolabaugh's July 2022 spinal fusion that she began to use a cane regularly. Thus, while records

5

predating her July 2022 lumbar fusion surgery did indicate she walked with a stooped forward, abnormal gait and had difficulties maintaining upright posture, (tr. 372, 387, 531, 599, 619, 743), Wolabaugh's own function report in January 2022, and the third-party function report of her aunt, did not report that she used a cane at that time. (Tr. 204, 237). Moreover, following a June 2022 examination, consultative examiner Dr. Ahmed Kniefati reported she did not use a cane, but did note her drop foot on the right and antalgic gait. (Tr. 534, 540).

Then, in July 2022, Wolabaugh underwent a lumbar fusion to address her lumbar degenerative disc disease and stenosis. (Tr. 626). Wolabaugh's disability report on appeal stated that she was using her walker and cane a lot more since her July 2022 surgery. (Tr. 248). Moreover, in October 2022, her husband submitted a third-party report stating she was recently told to use a cane. (Tr. 284). These subjective reports by Wolabaugh and her husband are supported by the medical record. Indeed, beginning in fall of 2022, multiple of Wolabaugh's providers reported that Wolabaugh had significant instability, and was a fall risk, reinforcing her use of an assistive device. The record indicates Wolabaugh had nerve damage from a laminectomy in 2017 causing right foot numbness and tingling. (Tr. 643-44, 961). She then experienced symptoms of pain radiating down her left leg following the July 2022 surgery, which was exacerbated by her use of a cane to compensate

for her right foot drop. (Tr. 643-44, 863). In August 2022, her orthopedist at OIP noted she walks with the use of a cane stating, "she felt like her leg gave out on her on 08/23/2022, causing her to fall down the stairs." (Tr. 636).  In September 2022, her neurologist reported an antalgic, abnormal gait and that she used a cane due to foot weakness. (Tr. 644). A physical therapy intake note in September 2022 also noted that, "she is using a cane for ambulation with an antalgic pattern and foot drop pattern on the right." (Tr. 659). In October 2022, her orthopedist at OIP again noted pain in her left leg was worse from using a cane to ambulate, that she had exhausted her treatment options and was still not experiencing relief from her lower extremity symptoms. (Tr. 863). Her podiatrist noted cane use and antalgic gait in March, May, and September 2023. (Tr. 959, 1093, 1111). In March 2023, the podiatrist explained that she had complete collapse and valgus of the right foot, a slapping type of gait unless she compensates at the knee, and that she "drags her right foot." (Tr. 961). The podiatrist considered her to be a significant fall risk. (Id.) OIP again noted her use of a cane in September 2023. (Tr. 1243).[2]

---

[2] It is worth noting there is an equivocal nature to the medical record concerning her use of an assistive device. For example, in December 2022, an orthopedist at OIP stated that she had been walking without the use of an assistive device. (Tr. 940). Nonetheless, given the overwhelming evidence indicating that, for at least part of the relevant period, she did use a cane to ambulate, the ALJ was required to more thoroughly address this evidence. As explained below, we do not reach the ultimate

Wolabaugh's cane use, which was clearly and repeatedly reinforced by her medical providers, was also clearly before the ALJ at the disability hearing on November 6, 2023. At the hearing, the ALJ questioned Wolabaugh about her use of a cane:

> Q. All right. From what I can tell, you're not used to getting kind of assistive device, no cane, crutches, walker or anything, anything like that?
> A. I use my cane when I go out and about because I don't have anything to hold onto in case my foot drops out, it does that at least probably once a day on me, if not more. But in my house, I just use the walls or the furniture or kind of be near or hold onto. But in stores, I do use it, my cane.
> Q. Was that prescribed?
> A. No.
> Q. Do you use it like if you're just plain standing, do you use it, the cane, or is it only when you're walking?
> A. I use it when I'm standing as well, because there's time when my knees will just give out on me as well.

(Tr. 42-43).

Thus, before the ALJ was Wolabaugh's testimony that she required a cane due to her right foot drop and leg weakness, testimony that was reinforced by the medical evidence following her July 2022 surgery showing providers repeatedly

---

conclusion as to whether her cane use was medically necessary under the regulations. Moreover, in January 2023, her treating provider concluded she could work without restriction, though this was an outlier opinion considering the balance of the record. (Tr. 1122-1125).

explaining that she used a cane because she had an antalgic gait, dragged her right foot, and was a significant fall risk.

A vocational expert also testified at the hearing but despite this clear evidence of Wolabaugh's cane use, the ALJ did not pose any hypothetical questions to the ALJ to determine whether the necessity of a cane for ambulation would significantly reduce Wolabaugh's ability to perform the jobs he identified.

Following this hearing on Wolabaugh's disability application, the ALJ issued a decision denying her claim on January 16, 2024. (Tr. 14-34). In that decision, the ALJ first concluded that Wolabaugh had not engaged in substantial gainful activity since her alleged onset date of disability, November 23, 2021, and that she met the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Wolabaugh had the following severe impairments: lumbar degenerative disc disease and breast cancer. (Tr. 20). At Step 3, the ALJ determined that Wolabaugh's impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Id.)

Between Steps 3 and 4, the ALJ concluded that Wolabaugh retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) with additional limitations. She can lift and/or carry 10 pounds occasionally and 10 pounds frequently; she can sit 6 hours and stand or walk for 2 hours each per 8-hour workday; she can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; she can have no concentrated exposure to extreme cold, wetness, vibration, fumes, dusts, gases, odors, poor ventilation, and unprotected heights or moving machine parts.

(Tr. 22). This RFC – which called for Wolabaugh to perform a limited range of sedentary work as defined by 20 CFR 404.1567(b) and occasionally balance, stoop, kneel and crouch, and stand and walk for up to two hours each day – made no provision whatsoever for Wolabaugh's use of a cane despite her testimony that she used a cane and the repeated reinforcement of her statements in the medical record.

Moreover, the ALJ's decision not to provide for Wolabaugh's cane use in the RFC was almost entirely unexplained. Indeed, the RFC assessment made only passing reference to the fact that "the claimant said she used a cane due to a foot drop, but this cane was not prescribed," (tr. 23), and stated later that "[t]here were some indications of poor gait due to a drop foot and providers stated she was a significant fall risk, and she was observed using a non-prescribed cane," (tr. 23-24), but the ALJ never engaged in a discussion of whether, or when, the use of the cane was medically necessary. Thus, it appears from the face of the decision that, while

10

the ALJ acknowledged the plaintiff used a cane, and her providers seemed to reinforce the need for the cane due to her being a significant fall risk, the ALJ concluded that since the cane was not prescribed it was not medically necessary.

The ALJ then found that Wolabaugh could perform both her past relevant work as a receptionist and other jobs which existed in significant numbers in the national economy. (Tr. 26-27). Thus, the ALJ concluded Wolabaugh had not been under a disability from the alleged onset date through the date of the decision. (Id.)

This appeal followed. (Doc. 1). On appeal, Wolabaugh argues, *inter alia*, that substantial evidence does not support the ALJ's RFC assessment because the ALJ failed to properly address Wolabaugh's cane use in determining the RFC. We agree that the ALJ's wholly unexplained rejection of Wolabaugh's cane use, which was supported both by her testimony and the statements of her medical providers, was not supported by substantial evidence. Accordingly, we will remand this case for further consideration and evaluation of the medical evidence as it pertains to this issue.

## III.  **Discussion**

### A.  **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

11

findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

12

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v.

13

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

14

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.      Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

15

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role

and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations

17

that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12,

18

2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his

19

decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

### C.   **This Case Will Be Remanded for Further Review.**

On appeal, the plaintiff argues the ALJ failed to properly address her cane use in determining the RFC.

We agree.

Case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal. At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary. On this score:

> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

20

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for her need for a cane. See Dieter, 2020 WL 2839087, at *9. In such instances a remand may be necessary.

Here, the ALJ acknowledged that Wolabaugh "said she used a cane due to a foot drop, but this cane was not prescribed," (tr. 23), and stated later that "[t]here were some indications of poor gait due to a drop foot and providers stated she was a significant fall risk, and she was observed using a non-prescribed cane," (tr. 23-24), but the ALJ never engaged in a discussion of whether the use of the cane was

21

medically necessary. Thus, it appears from the face of the decision that, while the ALJ acknowledged the plaintiff used a cane, and her providers seemed to reinforce the need for the cane due to her being a significant fall risk, the ALJ concluded that since the cane was not prescribed it was not medically necessary.

To the extent the ALJ's analysis of medical necessity started and ended with the observation that Wolabaugh's cane was not prescribed, this was error since it is well-settled that, "[t]he standard described in SSR 96–9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC. Instead, she only needs to present medical documentation establishing the need for the device." Staples v. Astrue, 329 F. App'x 189, 191–92 (10th Cir. 2009). See also Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."); SEAN W., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant., No. 20-CV-1653-FPG, 2022 WL 472570, at *3 (W.D.N.Y. Feb. 16, 2022); Krieger v. Comm'r of Soc. Sec., No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), report and

recommendation adopted, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019).

Moreover, the ALJ's analysis does not adequately contemplate the evidence since the ALJ simply dismissed the plaintiff's cane use as "non-prescribed" but did not address the objective and opinion evidence tending to show it as a medical necessity. In fact, although records pre-dating her July 2022 surgery, including the opinion of Dr. Kniefati,[3] do not indicate a need for a cane, her use of an assistive device after July 2022 is well documented in her medical record and was reinforced by multiple treating providers including her orthopedist, neurologist, physical therapist, and podiatrist who each noted both that she was using a cane for ambulation and the reason for its use – her antalgic gait and drop foot. See Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2002) (quoting Social Security Ruling 96-9p) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed

---

[3] As previously noted, the plaintiff does not challenge the ALJ's assessment of the medical opinion evidence and these opinions are overall unhelpful with regard to this specific issue. Nonetheless, it worth noting that the ALJ found all of the medical opinion evidence regarding her physical RFC unpersuasive and overall not conservative enough considering her level of impairment.

23

[.]"). Indeed, in March 2023, Wolabaugh's treating podiatrist explained that she had complete collapse and valgus of the right foot, a slapping type of gait unless she compensates at the knee, and that she "drags her right foot." (Tr. 961). The podiatrist considered her to be a significant fall risk. (Id.)

This need for a cane was then reinforced by Wolabaugh at the hearing, where she testified to the ALJ that she used her cane when she went out "in case my foot drops out." (Tr. 42). Moreover, her husband stated she was recently told to use a cane and her disability report on appeal stated she was using her cane a lot more since her July 2022 surgery. (Tr. 248).

Considering the issue of Wolabaugh's cane use was squarely before the ALJ, and the ALJ acknowledged her testimony and the medical record showing "[t]here were some indications of poor gait due to a drop foot and providers stated she was a significant fall risk, and she was observed using a non-prescribed cane," (tr. 23-24), more is needed by way of an explanation on the part of the ALJ as to why the plaintiff's cane use was not incorporated into the RFC.

Moreover, this error on the part of the ALJ was potentially outcome determinative. First, since the ALJ's questioning of the vocational expert at the hearing did not include any hypotheticals involving the use of an assistive device, there is no expert testimony upon which the Court can rely in determining whether

24

Wolabaugh could perform her past work or the other occupations identified by the VE if she required the use of a cane. See Howze, 53 F. App'x at 222 ("Even if the ALJ erred regarding the cane, though, any error was harmless as he asked the vocational expert to take the cane into account and there were still jobs available that appellant could perform"). And a finding that Wolabaugh's cane use is medically necessary could change the ultimate disability outcome since this could affect her ability to perform the standing and walking requirements of sedentary work, the occasional postural maneuvers, as well as the lift and/or carry requirements identified in the RFC. " See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4); SSR 96-9p. See also  Ubiles v. Berryhill, No. 15-CV-895-RJA-MJR, 2017 WL 4712208, at *6 (W.D.N.Y. Sept. 29, 2017), report and recommendation adopted, No. 1:15-CV-00895 (MAT), 2017 WL 4680492 (W.D.N.Y. Oct. 18, 2017) (citing Wright v. Colvin, No. 6:13-cv-6585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) ("If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are [sic] not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal.").

Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be

25

deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand. Because we have found a basis for remand on these grounds, we need not address the plaintiff's remaining arguments. To the extent that any other error occurred, it may be remedied on remand.

## IV.    Conclusion

Accordingly, for the foregoing reasons, this case will be REMANDED for further consideration.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: February 27, 2026

26